IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**JAMES TAYLOR**                                                                    **PLAINTIFF**

v.                                              CIVIL ACTION NO. 2:11-CV-234-KS-MTP

**NABORS DRILLING USA, LP**                                            **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants in part and denies in part** Defendant's Motion for Summary Judgment [70]. The Court grants the motion with respect to Plaintiff's claim for punitive damages, but the Court denies the motion in all other respects.

### I. BACKGROUND

This is a premises liability case stemming from an injury sustained by the employee of an independent contractor on an oil rig. Plaintiff was an employee of Frank's Casing Crew, which was hired as an independent contractor to run casing on an oil rig owned by Defendant. One of Defendant's employees – the driller – operated an elevator which would lift joints of casing up into the derrick to connect them to the casing already in the hole. Plaintiff was the "stabber." His job was to remove the pick-up line from the casing joint after it had been lifted, guide the casing joint into position so that it can properly align with the casing already in the hole, guide the mud fill-up tool into the top of the joint, and signal the driller to lower the joint into the hole.

The accident which led to this case occurred at night. It had been raining, and

there had been some wind. The testimony is mixed as to the state of the weather at the time of the accident. The casing crew had run approximately seventy joints of casing into the hole. The driller – Defendant's employee who controlled the speed of the elevator – removed his safety glasses to clean them, as he had done periodically throughout the night. He had already picked up a joint of casing and set it on top of the one in the hole. Plaintiff took the pick-up line off the joint and prepared to guide the mud fill-up tool into position. At this point, the parties' stories diverge.

Plaintiff alleges that the driller failed to slow or stop the elevator as he typically did. The driller usually slowed or stopped the elevator, allowing Plaintiff to guide the mud fill-up tool into position and the tong operators at the bottom of the derrick to screw the joints together. Plaintiff claims that the driller's failure to slow the elevator caused the mud fill-up tool to miss the top of the casing joint, which caused the elevator to tilt over. However, Defendant alleges that the wind, defects in the way Frank's Casing rigged its equipment, and Plaintiff's failure to properly signal the driller caused the elevator to swing over and miss the top of the casing joint.

Whatever the cause, the elevator struck Plaintiff in the chest, injuring him. He filed this suit in state court, and Defendant removed it. The Court now considers Defendant's Motion for Summary Judgment [70].

## II. DISCUSSION

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc.*

*v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### A. *Premises Owner's Duties to an Independent Contractor*

In the premises liability context, independent contractors are considered business invitees. *Coho Res., Inc. v. Chapman*, 913 So. 2d 899, 907 (Miss. 2005). Therefore, a premises owner has a general duty to "provide an independent contractor with a reasonably safe work environment or give warning of danger." *Nofsinger v. Irby*,

3

961 So. 2d 778, 781 (Miss. Ct. App. 2007). A premises owner is not, however, "an insurer of the [independent contractor's] safety." *Coho Res., Inc. v. McCarthy*, 829 So. 2d 1, 10 (Miss. 2002). There are exceptions to the general rule, which can be reduced to two issues: who controls the work which caused the injury, and whether the contractor had actual or constructive knowledge of the hazard which caused the injury. *Id.* at 10-14.

First, when the premises owner "devolves upon the contractor the right and fact of control of the premises and the nature and details of the work, the owner has no liabilities for injuries experienced by the contractor's workers where those injuries arose out of or were intimately connected with the work." *Id.* at 11.

> The intimately connected exception charges the plaintiff-contractor with constructive knowledge of defects closely related to the project for which he has been hired. The contractor should know of the defects because of his familiarity with the work site and expertise in how to safely accomplish the project. Therefore, the exception applies only in instances in which the contractors' employees were injured while engaged directly in labor that was dedicated exclusively to the contractors' jobs and in areas where those jobs must be performed.

*Stokes v. Emerson Elec. Co.*, 217 F.3d 353, 358 (5th Cir. 2000). The crucial factor is control. *Lambert v. Georgia-Pacific Corp.*, 32 F. Supp. 2d 914, 916 (S.D. Miss. 1999); *Magee v. Transcontinental Gas Pipe Line Corp.*, 551 So. 2d 182, 186 (Miss. 1989). If "the owner surrenders to the contractor all control over the performance of that aspect of the work that gives rise to the injury, there is no liability." *Lambert*, 32 F. Supp. at 916. When assessing this issue, the Court examines both the parties' contract and behavior. *Magee*, 551 So. 2d at 186. If a contractor can "show that, the contract

notwithstanding, the owner maintained substantial de facto control over those features of the work out of which the injury arose," the premises owner may be liable. *Id.*

Second, a premises owner is "not liable for the death or injury of an independent contractor or his employees resulting from dangers that the contractor, as an expert, knows or reasonably should know." *McCarthy*, 829 So. 2d at 14. Phrased differently, a premises owner will not be held liable where an independent contractor has "assumed the risk" of danger. *Stokes*, 217 F.3d at 357.[1] Accordingly, an "employer is relieved of the duty of informing an independent contractor of a danger at the work site if the independent contractor knows of that danger." *Nofsinger*, 961 So. 2d at 781.

> The "knowledge of the danger" exception . . . does not require such a close nexus between the dangerous condition and the work the contractor is obligated to perform. That rule rests on the premise that under circumstances where the contractor has knowledge of the condition, his ability to avoid the harm is equal to that of the owner of the premises. The ability of the contractor to avoid injury where he knows that a dangerous condition exists does not depend on his control over the manner in which the work is performed or his reason for being on the premises.

*Stokes*, 217 F.3d at 359.

## B. *Whether Frank's Casing's Controlled Relevant Aspects of the Work*

Defendant first argues that it is not liable for Plaintiff's injuries because his employer, Frank's Casing, controlled all aspects of the work. Plaintiff testified that

---

[1]This is a particular application of Mississippi's abandoned "open and obvious" rule. *Id.* "[B]y reintroducing the contractor's knowledge as a factor in determining the negligence of the premises owner, the Mississippi Supreme Court brought the "open and obvious" bar back into Mississippi law through the back door in cases dealing with independent contractors." *Id.* Therefore, the Court's analysis is restricted to premises claims by independent contractors.

Frank's Casing brought its own equipment and set it up on Defendant's oil rig. Plaintiff also testified that he did not receive any orders or instruction from Defendant's employees. Defendant's expert witness, Kenneth A. Kaigler, stated that Plaintiff was injured because his employer, Frank's Casing, set up the elevator in a manner that would automatically push it and casing joints toward the stabbing board, where Plaintiff was located.

Defendant's argument misconstrues the law, however. To apply this exception to the general premises liability rule, the independent contractor must have controlled all *relevant* aspects of the work, the ones which caused the injury. *Lambert*, 32 F. Supp. at 916. Plaintiff presented evidence that the driller (Defendant's employee) controlled the elevator brake, and that the accident occurred because the driller failed to apply the brake at the appropriate time. Plaintiff presented testimony from himself,[2] Cleo Pugh, and Tylester Leverette[3] indicating that the accident occurred because

---

[2]Defendant argues that the Court should disregard Plaintiff's testimony because it is "self-serving." That is not grounds for exclusion of otherwise competent deposition testimony. *C.R. Pittman Constr. Co. v. Nat'l Fire Ins. Co.*, 453 F. App'x 439, 443 (5th Cir. 2011). "If all 'self-serving' testimony were excluded from trials, they would be short indeed." *Id.*

[3]Defendant argues that the Court should disregard Leverette's testimony because he admitted that he was not looking at the driller at the time that Plaintiff's injury occurred. Leverette – a tong operator – was tasked with connecting the elevated casing joint to the one in the hole. He testified that the driller would typically slow or stop the elevator long enough for him to make a few turns and connect the two joints. At the time of Plaintiff's injury, Leverette did not have time to turn the joint. As soon as he locked his tongs on the casing joint, it started to descend. Accordingly, Leverette's failure to directly observe the driller does not render his testimony incompetent. Even if he was not looking at the driller, he would know whether the driller had applied the brake.

Defendant's employee failed to slow or stop the elevator as he had done for approximately seventy casing joints prior to the one which injured Plaintiff.[4] Leverette also testified that the driller responded to Plaintiff's injury by exclaiming, "My fault, I [messed] up, I [messed] up, I [messed] up, my fault."[5]

In its rebuttal, Defendant argues that Plaintiff indirectly controlled the brake through hand signals given to the driller. Plaintiff testified that, as a "courtesy," he would usually make a hand motion to signal the driller to stop the elevator, even though the driller could see where the elevator was located. Cleo Pugh gave similar testimony, but he also testified that he did not observe Plaintiff signal the driller to slow down prior to the accident. Regardless of what hand signals he provided, Plaintiff relied upon the driller to operate the brake. Indeed, Plaintiff testified that he gave the hand signal to slow down, but that the driller failed to apply the brake. Therefore, the Court concludes that there is a genuine issue of material fact as to whether Plaintiff possessed any meaningful control over the speed of the elevator.

For all of the reasons stated above, the Court concludes that Plaintiff has

---

[4] Plaintiff also presented a Root Cause Analysis Worksheet prepared by Frank's Casing after an investigation of the accident. The form contains a description of the incident and its purported causes. Defendant argues that it should be excluded as hearsay. In response, Plaintiff contends that the form is admissible as a business record under Rule 803(6). FED. R. EVID. 803(6). However, Plaintiff failed to authenticate the document, and it is not self-authenticating. *See* FED. R. EVID. 803(6)(D), 902(11)-(12). Accordingly, the Court may not consider it.

[5] Defendant argues that this statement should be excluded as hearsay, but it falls within the excited utterance exception to the hearsay rule. *See* FED. R. EVID. 803(2).

presented sufficient evidence to create a genuine dispute of material fact as to whether Defendant's employee controlled a relevant aspect of the work being performed by Plaintiff – the elevator brake.

C.  ***Whether Plaintiff's Injuries Were Intimately Connected to His Work***

Next, Defendant argues that it can not be liable for Plaintiff's injuries because they are intimately connected to the work he was hired to perform. However, as discussed above, the key factor is control. Plaintiff's employer – Frank's Casing – may have controlled the manner in which they performed their casing work, but genuine disputes of material fact exist as to 1) who controlled the elevator brake, 2) whether Defendant's employee applied the elevator brake, and 3) whether failure to apply the elevator brake caused Plaintiff's injury. Therefore, summary judgment would be inappropriate.

D.  ***Whether Plaintiff Assumed the Risk***

Defendant also argues that Plaintiff had both actual and constructive knowledge of the dangerous conditions which caused his injury because he is the one who created them. Defendant notes that Frank's Casing set up their own equipment and held their own safety meetings. Defendant also cites Kaigler's expert opinion that Frank's Casing improperly set up its equipment.

As already discussed, Plaintiff presented sufficient evidence to create a genuine dispute of material fact as to whether Defendant's employee caused the accident by failing to apply the elevator brake. Plaintiff could not have had actual or constructive knowledge that would occur. Indeed, Plaintiff presented evidence that Defendant's

8

employee had properly applied the elevator brake seventy times before he allegedly failed to do so. In short, Plaintiff could not have assumed the risk of Defendant's employee's negligence.

### E. *Whether Plaintiff Must Designate a Liability Expert*

Defendant argues that Plaintiff's failure to designate a liability expert is fatal to his claims, but it failed to cite any law in support of this argument. "[E]xpert testimony is not required where the facts surrounding the alleged negligence are easily comprehensible to a jury." *Walmart Stores v. Johnson*, 807 So. 2d 382, 390 (Miss. 2001). The facts of this case are not complicated, and understanding Plaintiff's theory of liability requires no specialized or technical knowledge. Therefore, expert testimony is not required.

### F. *Punitive Damages*

Finally, Defendant argues that the facts of this case are not sufficiently egregious to merit punitive damages. In response, Plaintiff argues that a jury could reasonably conclude that the driller's failure to apply the brake displayed gross or reckless disregard for his safety.

In Mississippi, "[p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." MISS. CODE ANN. § 11-1-65(1)(a). "The totality of the circumstances and the aggregate conduct of the defendant must be examined before punitive damages are

9

appropriate." *Wise v. Valley Bank*, 861 So. 2d 1029, 1034 (Miss. 2003). Punitive damages are generally allowed only "where the facts are highly unusual and the cases extreme." *Id.* at 1035. "[S]imple negligence is not of itself evidence sufficient to support punitive damages, but accompanying facts and circumstances may be used to show that that portion of defendant's conduct which constituted proximate cause of the accident was willful and wanton or grossly negligent." *Choctaw Maid Farms v. Hailey*, 822 So. 2d 911, 924 (Miss. 2002).

Punitive damages would be inappropriate in this case. The facts – when construed in the light most favorable to Plaintiff – do not demonstrate malice, gross negligence, recklessness, or fraud. At worst, Defendant's employee was negligent, diverting his attention from the rig for a brief time to clean his glasses. Simple negligence does not merit punitive damages. *Id.*

### III. CONCLUSION

For the reasons stated above, the Court **grants in part and denies in part** Defendant's Motion for Summary Judgment [70]. The Court grants the motion with respect to Plaintiff's claim for punitive damages, but the Court denies the motion in all other respects.

SO ORDERED AND ADJUDGED this 4th day of February, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE